IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| BRICE WILSON, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION FILE NO. |
| | : | |
| CITY OF POWDER SPRINGS, GEORGIA; | : | |
| WILLIAM CHARLES SEWELL, individually | : | |
| and in his official capacity as Chief of Police | : | |
| for the City of Powder Springs, Georgia; | | |
| ALTON BAILEY a/k/a Vernon Bailey; and | : | |
| KEITH MOORE; | : | |
| | : | |
| Defendants. | : | |

## COMPLAINT

Plaintiff, BRICE WILSON, files this complaint against Defendants

POWDER SPRINGS, GEORGIA; WILLIAM CHARLES SEWELL, individually

and in his official capacity as Chief of Police for the City of Powder Springs,

Georgia; ALTON BAILEY a/k/a Vernon Bailey; and KEITH MOORE.  All of the

allegations contained in this Complaint are incorporated into each count.

## JURISDICTION, VENUE AND PARTIES

1.

This is a civil rights and tort action based on the United States Constitution

(Amendments IV, XIV); the Georgia Constitution (Art. I, § I, ¶¶ I, II, XIII, XVII);

42 U.S.C. §§ 1983, 1985 and 1988; and Title 51 of the Official Code of Georgia. Plaintiff's claims are based on violations of his civil rights under color of state law; breach of legal duty; assault and battery; false arrest; false imprisonment; malicious prosecution; and intentional infliction of emotional distress.

2.

Plaintiff is an individual resident of Villa Rica, Douglas County, Georgia.

3.

Defendant CITY OF POWDER SPRINGS, GEORGIA (hereinafter referred to as "POWDER SPRINGS") is a local municipality and governmental entity in the State of Georgia.  POWDER SPRINGS funds, maintains and operates the Powder Springs Police Department ("PSPD") in Powder Springs, Cobb County, Georgia.

4.

Defendant WILLIAM CHARLES SEWELL (hereinafter referred to as "CHIEF SEWELL") is the Chief of Police for POWDER SPRINGS and manages PSPD.  CHIEF SEWELL is sued herein individually and in in his official capacity and as an agent, legal representative and employee of POWDER SPRINGS.

5.

On and after June 1, 2011, Defendant ALTON BAILEY a/k/a Vernon Bailey (hereinafter referred to as "BAILEY") was a police lieutenant and supervisory police officer employed by POWDER SPRINGS.

6.

On and after June 1, 2011, Defendant KEITH MOORE (hereinafter referred to as "MOORE") has been a police sergeant and law enforcement officer employed by POWDER SPRINGS.

7.

At all times material hereto, BAILEY and MOORE acted and conspired to act as agents, legal representatives and employees of POWDER SPRINGS and PSPD under the supervision, direction, control and authority of CHIEF SEWELL. POWDER SPRINGS and CHIEF SEWELL are liable for the acts and tortious conduct of MOORE and BAILEY described herein.

8.

At all times material hereto, Defendants acted under color of state law and contrary to the Constitution and laws of the United States of America and the State of Georgia.  CHIEF SEWELL, MOORE and BAILEY acted within the scope of their employment with POWDER SPRINGS in the course of their official duties.

9.

All of the acts, omissions and events referred to herein occurred or were committed in Powder Springs, Cobb County, Georgia.  At least three (3) defendants reside or are located in this judicial district and division.  Venue is proper in this Court pursuant to 28 U.S.C. § 1391 and Local Rule 3.1(B).

10.

This Court has subject matter jurisdiction of this action.  Plaintiff served a proper and timely ante litem notice of his claim on Defendants POWDER SPRINGS and CHIEF SEWELL as a prerequisite to filing this action.

11.

Plaintiff is asserting federal claims against each defendant in this action along with related, supplemental state law claims.  All of the parties are subject to the jurisdiction of this Court based on 28 U.S.C. §§ 1331, 1343 and 1367.

**RELEVANT FACTS, CONDUCT & EVENTS**

12.

On June 1, 2011, Plaintiff was driving a 2005 Ford Focus automobile ("the Focus") with two passengers when MOORE initiated a "traffic stop" of the Focus ostensibly "for not having a working tag light."

13.

MOORE claimed that the Focus drove away from a "know(n) drug house."

14.

In fact, MOORE knew that Plaintiff and his friends drove away from a residential driveway that was not associated with any known "drug house." The alleged tag light violation was merely a pretext for an unjustified traffic stop.

4

15.

MOORE stopped the Focus because it was apparently occupied by young black males.  MOORE initiated this traffic stop to harass the occupants of the Focus based substantially on their race and to find an excuse to search for evidence of a criminal offense.

16.

During the traffic stop, MOORE instructed Plaintiff to get out of the Focus. MOORE frisked Plaintiff for weapons and stated that Plaintiff smelled like marijuana.  MOORE repeatedly asked Plaintiff to produce marijuana and Plaintiff repeatedly denied having any marijuana in his possession.

17.

After the initial frisk, MOORE instructed Plaintiff to stand in front of a police car for a more invasive search.

18.

At this point, MOORE was searching for marijuana rather than frisking Plaintiff for weapons.  There was no legal justification for this invasive search.

19.

Plaintiff remained compliant and submissive while MOORE proceeded with the invasive search.  Both passengers remained in the Focus while Plaintiff spread his legs and placed his hands on the hood of the police car for this search.

20.

When BAILEY arrived at the scene as a "back up" police officer, MOORE

reached around Plaintiff from behind and groped Plaintiff's crotch.

21.

When MOORE groped Plaintiff's crotch, Plaintiff became startled and

reached for MOORE's wrist without grabbing it.  As soon as Plaintiff barely

touched MOORE's wrist, MOORE put Plaintiff in a chokehold from behind.

22.

As he was placed in a chokehold, Plaintiff immediately spread his arms apart

and moved his hands away from MOORE.  Plaintiff clearly showed that he was not

physically resisting MOORE.

23.

While MOORE was choking Plaintiff, BAILEY rushed over to grab

Plaintiff's legs and lift Plaintiff's feet off the ground.  Together MOORE and

BAILEY slammed Plaintiff on the ground face down and handcuffed his arms

behind his back.

24.

MOORE and BAILEY lifted Plaintiff off the ground and shoved him onto

the hood of the police car.  Both officers then proceeded to search Plaintiff's pants

for marijuana, but the police officers did not find any marijuana.

6

25.

MOORE unbuckled and loosened Plaintiff's belt to search around his

buttocks.  BAILEY lifted Plaintiff's arms up high behind his back as the officers

proceeded with this invasive, offensive, unjustified and illegal search.

26.

Plaintiff screamed in pain and began to struggle.  At that point, BAILEY

grabbed Plaintiff's left arm in an armlock and pushed Plaintiff's arms even higher.

Plaintiff screamed again and begged for help.

27.

BAILEY intentionally discharged his Taser into Plaintiff's back while

Plaintiff was completely helpless and fully restrained.  Plaintiff collapsed on the

ground in front of the police car.

28.

BAILEY intentionally discharged his Taser into Plaintiff again while

Plaintiff was lying on the ground.  BAILEY threatened to use the Taser on Plaintiff

a third time while Plaintiff was still lying on the ground.

29.

BAILEY repeatedly used his Taser against Plaintiff as an offensive weapon

while Plaintiff was in a completely helpless and submissive position.

30.

The entire physical attack on Plaintiff and events referenced in paragraphs 17 through 29 of this Complaint are referred to herein as "the Attack."

31.

Plaintiff remained on the ground while police officers removed the passengers from the Focus.  The passengers were also handcuffed and detained by PSPD officers without any legal justification.

32.

MOORE and another police officer returned to Plaintiff as he remained lying on the ground.  The officers lowered Plaintiff's pants to complete their search.

33.

After an intrusive and unjustified search of his body, Plaintiff was finally led away with his pants pulled down to his thighs in public view.

34.

In their police reports, MOORE and BAILEY both failed to identify any of the passengers in the Focus or any witnesses at the scene of the Attack.

35.

Another officer opened the car door and the Focus was thoroughly searched before it was impounded.  No marijuana was found in this search, but BAILEY falsely alleged in his police incident report that marijuana was found in the Focus.

36.

Plaintiff did not possess any marijuana.  Plaintiff's passengers did not possess any marijuana.  There was no marijuana in the Focus.

37.

Plaintiff was arrested, booked and charged with "resisting an officer" in violation of a POWDER SPRINGS municipal ordinance.

38.

There was no arguable probable cause for the arrest of Plaintiff.

39.

Plaintiff posted a bail bond to avoid staying in jail based on the "resisting an officer" charge.

40.

Plaintiff paid towing and storage fees to recover the impounded Focus.

41.

MOORE's police incident report falsely states that Plaintiff continued to "fight" and "resist" the two police officers.

42.

Plaintiff never physically or verbally resisted MOORE or BAILEY during the traffic stop or the Attack.  To the contrary, Plaintiff remained cooperative, polite and compliant while he was attacked and handcuffed by the police officers.

43.

The conduct of MOORE and BAILEY was objectively unreasonable, willful, intentional, reckless, malicious and negligent.  MOORE and BAILEY committed these tortious acts with conscious disregard for the safety, health, life and physical well-being of Plaintiff.

44.

In August 2011, the facts and circumstances of the Attack were divulged and explained to POWDER SPRINGS and CHIEF SEWELL.  However, POWDER SPRINGS continued to prosecute Plaintiff for the criminal offense of "resisting an officer."

45.

PSPD conducted an internal affairs investigation of MOORE's conduct. Despite videotaped, undisputed evidence that MOORE committed tortious and criminal acts against Plaintiff during the Attack, PSPD took no meaningful disciplinary action against MOORE.

46.

Cobb County, Georgia (hereinafter referred to as "Cobb County") is a governmental entity and county subdivision of the State of Georgia.  Cobb County funds, maintains, manages and operates the Cobb County Police Department ("CCPD") in Cobb County, Georgia.

47.

CHIEF SEWELL persuaded Cobb County and CCPD to conduct a separate investigation of MOORE's behavior and BAILEY's behavior during the traffic stop and the Attack.

48.

Defendants, Cobb County and CCPD all distorted and disregarded material evidence to justify the misconduct of MOORE and BAILEY.

49.

POWDER SPRINGS, CHIEF SEWELL and PSPD failed to investigate BAILEY's conduct because BAILEY was no longer employed with PSPD.

50.

The PSPD and CCPD investigations fabricated evidence that Plaintiff "grabbed" MOORE during the Attack; disregarded criminal offenses blatantly committed by MOORE and BAILEY; disregarded material witnesses; and disregarded MOORE's and BAILEY's blatant fabrications about material events that occurred during the traffic stop and the Attack.

51.

Defendants conspired to use the PSPD internal affairs investigation and the CCPD investigation as protection from any civil liability or criminal prosecution for their respective roles in the Attack.

52.

POWDER SPRINGS and CHIEF SEWELL failed and refused to properly investigate the Attack or to take disciplinary action against MOORE.

53.

MOORE and BAILEY jointly and severally committed at least twelve (12) criminal offenses under color of state law while ostensibly performing their duties during the traffic stop and the Attack.  Plaintiff was victimized by each of these criminal offenses, specifically including:

a)	a simple battery when MOORE grabbed Plaintiff's crotch in violation of O.C.G.A. § 16-5-23;

b)	a simple battery when MOORE put a chokehold on Plaintiff in violation of O.C.G.A. § 16-5-23;

c)	a simple battery when MOORE and BAILEY threw Plaintiff on the ground face down in violation of O.C.G.A. § 16-5-23;

d)	a false imprisonment when MOORE and BAILEY handcuffed, arrested and detained Plaintiff in violation of O.C.G.A. § 16-5-41;

e)	a simple battery when MOORE and BAILEY searched inside Plaintiff's pants in violation of O.C.G.A. § 16-5-23;

f)	two (2) batteries when BAILEY shocked Plaintiff twice with a Taser while he was handcuffed, fully restrained and helpless in violation of O.C.G.A. §

16-5-23.1;

g)      two (2) aggravated assaults when BAILEY shocked Plaintiff twice with a Taser while he was handcuffed, fully restrained and helpless in violation of O.C.G.A. § 16-5-21;

h)      a false report of a crime in violation of O.C.G.A. § 16-10-26 when MOORE officially reported that Plaintiff committed the criminal offense of resisting an officer and that Plaintiff had been to a known "drug house;"

i)      a false report of a crime in violation of O.C.G.A. § 16-10-26 when BAILEY officially reported that Plaintiff committed the criminal offense of resisting an officer and that marijuana was found in the Focus; and

j)      reckless conduct in causing physical harm to Plaintiff and endangering his safety in violation of O.C.G.A. § 16-5-60(b).

54.

POWDER SPRINGS and CHIEF SEWELL failed and refused to initiate, facilitate or pursue an appropriate criminal investigation or prosecution of MOORE or to effectively discipline MOORE based on his role in the Attack.

55.

POWDER SPRINGS and CHIEF SEWELL failed and refused to initiate, facilitate or pursue an appropriate criminal investigation or prosecution of BAILEY based on his role in the Attack.

56.

POWDER SPRINGS and CHIEF SEWELL tolerated, approved, condoned and ratified the unlawful and tortious conduct of MOORE and BAILEY. POWDER SPRINGS and CHIEF SEWELL also defended and protected MOORE and BAILEY from appropriate consequences and penalties for their actions.

57.

MOORE and BAILEY had a legal duty to act as law enforcement officers without committing criminal offenses against Plaintiff; without jeopardizing Plaintiff's physical or mental well-being; and without negligently or intentionally causing injury or damage to Plaintiff.

58.

POWDER SPRINGS and CHIEF SEWELL had a legal and public duty to properly supervise, train and control MOORE and BAILEY as police officers employed by PSPD.  This duty extended to Plaintiff and the general public.

59.

Defendants all breached their legal duties to Plaintiff during the Attack.

60.

POWDER SPRINGS and CHIEF SEWELL were deliberately indifferent to the consequences of their toleration, approval, condonation and ratification of the tortious conduct of MOORE and BAILEY.

61.

POWDER SPRINGS and CHIEF SEWELL were deliberately indifferent to the consequences of their failure to adequately train PSPD police officers (including MOORE and BAILEY) in the legal requirements and procedures for detaining suspects; in the legal requirements and procedures for the search and seizure of suspects and property; in the use of force (including Tasers and other weapons); in the production of accurate incident reports and statements to preserve evidence; and in identifying material witnesses at a crime scene.

## COUNT ONE

### Federal & State Civil Rights Violations

62.

Defendants violated and conspired to violate Plaintiff's federal and Georgia state constitutional rights.  Defendants specifically violated Plaintiff's federal and state constitutional rights to be secure against unreasonable searches and seizures as well as Plaintiff's federal and state constitutional right to due process of law prior to any deprivation of his liberty.

63.

POWDER SPRINGS and CHIEF SEWELL were responsible for the hiring, training, supervision, discipline and firing of PSPD police officers, including MOORE and BAILEY.

64.

POWDER SPRINGS and CHIEF SEWELL established, administered and enforced PSPD rules, regulations, customs, policies, practices and procedures.

65.

During the traffic stop and the Attack, MOORE and BAILEY acted in accordance with their training as police officers under the supervision of POWDER SPRINGS and CHIEF SEWELL.

66.

During the traffic stop and the Attack, MOORE and BAILEY acted in accordance with PSPD rules, regulations, customs, polices, practices and procedures which did not adequately address the use of force and Tasers.

67.

POWDER SPRINGS and CHIEF SEWELL failed to adequately train or supervise MOORE and BAILEY in the use of force and Tasers.  This failure to train and supervise police officers proximately caused and contributed to the violations of Plaintiff's civil rights, his injuries and his damages.

68.

POWDER SPRINGS and CHIEF SEWELL failed to establish, administer and enforce adequate or appropriate rules, regulations, customs, policies, practices and procedures of PSPD.

16

69.

POWDER SPRINGS and CHIEF SEWELL failed to implement or utilize appropriate supervisory, training and disciplinary measures or procedures to prevent the unlawful and tortious acts committed by MOORE and BAILEY.

70.

Defendants engaged and conspired to engage in reprehensible and intentional police tactics to physically abuse, detain, arrest and prosecute Plaintiff under color of state law while depriving Plaintiff of his civil rights.

71.

During the traffic stop and the Attack, MOORE and BAILEY performed invasive body searches on Plaintiff without probable cause to believe that such searches were legally justified.  During these searches, MOORE and BAILEY intentionally victimized and provoked Plaintiff in an effort to justify the intrusive search and arrest of Plaintiff.

72.

Defendants violated Plaintiff's state constitutional right in Georgia to be free from abuse while he was being arrested and under arrest.

73.

By June 1, 2011, the law was clearly established that police officers cannot legally commit acts that MOORE and BAILEY committed against Plaintiff, including but not limited to the use of excessive force or a weapon (including a

Taser) on a nonviolent, compliant suspect or person. Accordingly, Defendants are not entitled to qualified immunity for their objectively unreasonable and excessive use of force on Plaintiff.

## COUNT TWO

## Assault & Battery

### 74.

Defendants negligently, intentionally and repeatedly assaulted and battered Plaintiff during the Attack.

### 75.

Defendants negligently, intentionally and repeatedly used a Taser as a weapon and as a deadly weapon against Plaintiff during the Attack.

## COUNT THREE

## False Arrest & False Imprisonment

### 76.

MOORE and BAILEY justified their misconduct and their illegal, intrusive searches by falsely arresting Plaintiff.

### 77.

Defendants used their legal authority to enforce state and municipal laws to falsely arrest Plaintiff without probable cause. See O.C.G.A. § 51-7-1.

18

78.

Defendants deprived Plaintiff of his personal liberty by detaining and falsely imprisoning Plaintiff during and after the traffic stop.  See O.C.G.A. § 51-7-20.

## COUNT FOUR

## Malicious Prosecution

79.

Defendants maliciously prosecuted Plaintiff for criminal offenses without any probable cause or arguable probable cause to do so.

80.

The POWDER SPRINGS prosecutor refused to dismiss the "resisting an officer" charge against Plaintiff despite indisputable, videotaped evidence that this criminal charge was fabricated and unjustified.

81.

On September 28, 2011, Plaintiff's case was bound over to the Cobb County Solicitor's Office for further prosecution under O.C.G.A. § 16-10-24, the Georgia criminal statute for obstruction of a law enforcement officer.

82.

The Cobb County Solicitor's Office did not pursue the frivolous obstruction charge against Plaintiff.  However, Plaintiff was prosecuted for the tag light violation until September 9, 2011, when the tag light violation charge was

dismissed by a *nolle prosequi* in the State Court of Cobb County, Georgia.

## COUNT FIVE

### Intentional Infliction of Emotional Distress

83.

Defendants wantonly and intentionally humiliated Plaintiff during the Attack.  Defendants also infringed upon and violated the peace, happiness and feelings of Plaintiff during the Attack.

84.

Defendants wantonly and intentionally infringed upon and violated the peace, happiness and feelings of Plaintiff by unlawfully detaining, arresting and criminally prosecuting Plaintiff after the Attack.

## INJURIES & DAMAGES

85.

Plaintiff had never been arrested before the Attack.  The Attack caused Plaintiff to acquire an unjustified criminal record.

86.

The Attack caused Plaintiff to experience physical discomfort, pain, suffering, shock, fright, humiliation, mental anguish and emotional trauma.  The Attack also created a tangible risk of death or additional bodily harm to Plaintiff.

87.

The Attack caused Plaintiff to suffer financial losses that included attorney's fees, legal costs, a bail bond, impoundment fees and travel expenses related to defending an unjustified criminal prosecution.

88.

As a result of the malicious criminal prosecution, Plaintiff faced a criminal penalty of up to one (1) year of imprisonment, community service, hard labor and/or a fine of up to $1,000.

89.

Defendants are all jointly and severally liable to Plaintiff in monetary damages as just compensation for these violations of Plaintiff's constitutional and legal rights and the resulting damages.

90.

The acts, omissions and intentions of all Defendants constitute aggravating circumstances for which Plaintiff should recover additional, punitive and exemplary damages from SEWELL, MOORE and BAILEY.

91.

Defendants are liable for Plaintiff's attorney fees and litigation expenses associated with vindicating his civil rights and pursuing his civil rights claims. Defendants have also acted in bad faith, been stubbornly litigious, and caused

Plaintiff unnecessary trouble and expense.  As a result, Plaintiff should recover his attorney's fees, costs and litigation expenses in this action pursuant to 42 U.S.C. § 1988, O.C.G.A. § 13-6-11 and any other applicable provisions of law.

**WHEREFORE**, Plaintiff BRICE WILSON respectfully prays for a TRIAL BY JURY and an award of the following relief from Defendants POWDER SPRINGS, GEORGIA; WILLIAM CHARLES SEWELL; ALTON BAILEY a/k/a Vernon Bailey; and KEITH MOORE, both jointly and severally:

(a)     Actual and compensatory damages from all Defendants;

(b)     Litigation expenses, costs and reasonable attorney's fees that Plaintiff incurs related to this action from all Defendants;

(c)     Additional, exemplary and punitive damages from CHIEF SEWELL in his individual capacity, BAILEY and MOORE; and

(d)     Such other and further relief as the Court deems just and proper.

Respectfully submitted,

/s/ *James W. Howard*
James W. Howard
Georgia Bar No. 370925

/s/ *Sharon Effatt Howard*
Sharon Effatt Howard
Georgia Bar No. 371275

22

ATTORNEYS FOR PLAINTIFF

THE HOWARD LAW FIRM, P.C.
Suite 200, Kyleif Center
1479 Brockett Road
Tucker, Georgia 30084
(770 270-5080